# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| FEDERAL LAW ENFORCEMENT OFFICERS ASSOCIATION,<br><br>                    Plaintiff,<br><br>v.<br><br>PETER NERONHA, in his official capacity as Attorney General of the State of Rhode Island, and DARNELL S. WEAVER, in his official capacity as Superintendent of the Rhode Island State Police,<br><br>                    Defendants. | Civil Action No.:<br><br><br><br>**COMPLAINT**<br>*(Filed Electronically)* |

Plaintiff, Federal Law Enforcement Officers Association, alleges as follows:

## SUMMARY OF THE CASE

1. The Law Enforcement Officers Safety Act ("LEOSA") confers a uniform, national right for retired law enforcement officers to carry a concealed firearm if: (1) they are "qualified" under LEOSA, and (2) they are carrying LEOSA-compliant identification.

2. In violation of this federal right, Rhode Island criminalizes the concealed carry of a firearm unless the retired officer obtain a separate, Rhode-Island specific permit. The Rhode Island permit is not a LEOSA identification. Moreover, unlike LEOSA identification, the Rhode Island permit requires a separate

1

application and fee,[1] imposes more onerous requirements than otherwise mandated by LEOSA, and can be denied or revoked in the sole discretion of the Superintendent of State Police.

3.  The Federal Law Enforcement Officers Association ("FLEOA"), which represents the interests of federal law enforcement officers, including retired federal law enforcement officers residing in Rhode Island, and throughout the United States, seeks a declaration that the Rhode Island's laws are preempted and seeks a judgment that the enforcement of those laws violates the rights of its members.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action arises under the United States Constitution and 42 U.S.C. § 1983. This action also seeks relief under 28 U.S.C. §§ 2201 *et seq.*

5.  Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in the District of Rhode Island, where Defendants' offices are located and where Plaintiff's members affected by the conduct alleged herein reside.

---

[1] In some cases, Defendants have waived the fee for retired federal law enforcement officers; however, that policy remains subject to change at any time.

## **PARTIES AND STANDING**

6. Plaintiff Federal Law Enforcement Officers Association ("FLEOA") is a non-profit professional organization with its principal place of business at 1100 Connecticut Avenue, NW, Suite 900, Washington, D.C. 20036.

7. FLEOA's mission is to represent the interests of active and retired federal law enforcement officers and to advocate for their rights. It currently represents over 28,000 federal law enforcement officers across sixty-five different agencies in all states, including Rhode Island.

8. FLEOA advocated before Congress for LEOSA and its subsequent amendments to be enacted. It has also represented its interests and its members' interests in litigation seeking to vindicate the denial of its members' LEOSA rights. *See, e.g.*, *Federal Law Enforcement Officers Association v. N.J. Attorney General*, 93 F.4th 122 (3d Cir. 2024).

9. FLEOA's members include retired law enforcement officers residing in Rhode Island who are entitled to carry a concealed firearm under LEOSA because: (1) they are "qualified" under LEOSA, and (2) they are carrying LEOSA-compliant identification. Yet, under Rhode Island law, those members cannot carry a firearm under LEOSA without being subject to arrest and prosecution, as described herein.

10. These members are forced to obtain Rhode Island permits to avoid prosecution.

11. Defendant Peter Neronha is the Attorney General of the State of Rhode Island. In that capacity, he is the State's chief law enforcement officer and is responsible for enforcing or overseeing the enforcement of Rhode Island law.

12. Defendant Colonel Darnell S. Weaver is the Superintendent of the Rhode Island State Police. In that capacity, he is responsible for enforcing or overseeing the enforcement of Rhode Island's statutes related to firearms permits. He is also responsible for the investigation and arrest of individuals that do not comply with Rhode Island law.

## FACTS

### The Law Enforcement Officers Safety Act

13. The Law Enforcement Officers Safety Act ("LEOSA") provides in relevant part as follows:

> Notwithstanding any other provision of the law of any State or any political subdivision thereof, an individual who is a qualified retired law enforcement officer and who is carrying the identification required by subsection (d) may carry a concealed firearm that has been shipped or transported in interstate or foreign commerce, subject to subsection (b).

18 U.S.C. § 926C(a).

14. Congress passed LEOSA to eliminate the "complex patchwork" of state and local firearm carry laws, and to replace it with a uniform, national standard that applies to all retired law enforcement officers, anywhere in the United States. *See*

S. Rep. No. 108-29, 2003 WL 1609540, at *3 (2003); H.R. Rep. No. 108-560, 2004 WL 5702383, at *3 (2004).

15. To combat that issue, LEOSA confers a uniform, national right to carry a concealed firearm if two criteria are met.

16. <u>First</u>, an individual must be a "qualified retired law enforcement officer" as defined in LEOSA (referred to as a "<u>QRLEO</u>").

17. Under LEOSA, a QRLEO is an individual who, when they wish to carry, satisfies the following criteria under subsection (c) of LEOSA:

> (1) separated from service in good standing from service with a public agency as a law enforcement officer;
>
> (2) before such separation, was authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law, and had statutory powers of arrest or apprehension under section 807(b) of title 10, United States Code (article 7(b) of the Uniform Code of Military Justice);
>
> (3)
>
> (A) before such separation, served as a law enforcement officer for an aggregate of 10 years or more; or
>
> (B) separated from service with such agency, after completing any applicable probationary period of such service, due to a service-connected disability, as determined by such agency;
>
> (4) during the most recent 12-month period, has met, at the expense of the individual, the standards for qualification in firearms training for active law enforcement officers, as determined by the former agency of the individual, the

5

> State in which the individual resides or, if the State has not established such standards, either a law enforcement agency within the State in which the individual resides or the standards used by a certified firearms instructor that is qualified to conduct a firearms qualification test for active duty officers within that State;
>
> (5)
>
> (A) has not been officially found by a qualified medical professional employed by the agency to be unqualified for reasons relating to mental health and as a result of this finding will not be issued the photographic identification as described in subsection (d)(1); or
>
> (B) has not entered into an agreement with the agency from which the individual is separating from service in which that individual acknowledges he or she is not qualified under this section for reasons relating to mental health and for those reasons will not receive or accept the photographic identification as described in subsection (d)(1);
>
> (6) is not under the influence of alcohol or another intoxicating or hallucinatory drug or substance; and
>
> (7) is not prohibited by Federal law from receiving a firearm.

18. <u>Second</u>, an individual must be carrying "identification" as defined in subsection (d) of LEOSA.

19. Under LEOSA, there are two types of valid identification—both involving a combination of photographic identification and proof of recent firearms qualification.

20. Under subsection (d)(1) of LEOSA, the identification may be an "all-in-one" identification as follows:

> a photographic identification issued by the agency from which the individual separated from service as a law enforcement officer that identifies the person as having been employed as a police officer or law enforcement officer and indicates that the individual has, not less recently than one year before the date the individual is carrying the concealed firearm, been tested or otherwise found by the agency to meet the active duty standards for qualification in firearms training as established by the agency to carry a firearm of the same type as the concealed firearm.

21. Under subsection (d)(2) of LEOSA, the identification may be two separate documents as follows:

> (A) a photographic identification issued by the agency from which the individual separated from service as a law enforcement officer that identifies the person as having been employed as a police officer or law enforcement officer; and
>
> (B) a certification issued by the State in which the individual resides or by a certified firearms instructor that is qualified to conduct a firearms qualification test for active duty officers within that State that indicates that the individual has, not less than 1 year before the date the individual is carrying the concealed firearm, been tested or otherwise found by the State or a certified firearms instructor that is qualified to conduct a firearms qualification test for active duty officers within that State to have met—
>
>> (I) the active duty standards for qualification in firearms training, as established by the State, to carry a firearm of the same type as the concealed firearm; or

>> (II) if the State has not established such standards, standards set by any law enforcement agency within that State to carry a firearm of the same type as the concealed firearm.

22. If an individual is a "QRLEO" under subsection (c) of LEOSA and is carrying either type of "identification" recognized under subsection (d) of LEOSA, then the individual may carry a concealed "firearm" (as defined in subsection (e)) anywhere in the United States (subject to certain exceptions in subsection (b) which are not relevant to the claims herein).

23. The right to carry in LEOSA applies "[n]otwithstanding any other provision of the law of any State or any political subdivision thereof." *See* 18 U.S.C. § 926C(a).

## **Rhode Island Law**

24. Rhode Island law prohibits an individual from carrying a concealed firearm unless they have a state-issued license or permit. *See* R.I. GEN. LAWS § 11-47-8(a).

25. The State has created its own state-specific scheme for retired police officers to obtain a permit to carry a concealed firearm ("RPO Permit").

26. Under R.I. GEN. LAWS § 11-47-18, a retired law enforcement officer "may be issued a license or permit" if they "retired in good standing after at least twenty (20) years of service, or retired in good standing due to a physical disability other than a psychological impairment."

27. To obtain the permit from the State Attorney General, the retired officer must present a certification that they qualified with the firearm they wish to carry, *see* § 11-47-15 and -16.

28. The permit issued under § 11-47-18 is valid for four years, and may be revoked at any time for "just cause." R.I. GEN. LAWS § 11-47-13.

29. A Rhode Island RPO Permit is not LEOSA identification.

30. Moreover, the Rhode Island RPO Permit imposes more onerous requirements that do not exist under LEOSA (such as requiring twenty years of service, rather than ten years under LEOSA).

31. The Rhode Island RPO Permit is only valid for four years.

32. In addition, the decision to issue a Rhode Island RPO Permit by the Attorney General is discretionary ("may issue") and, once issued, the Rhode Island RPO Permit may be revoked—again, at the discretion of the State—at any time for "just cause." Indeed, "a pistol permit is a privilege left to the sole discretion of the Attorney General." *See* Rhode Island Pistol Permit Policy at 1.

33. Rhode Island law does not have an exception for individuals lawfully carrying a concealed firearm under LEOSA.

34. Thus, a retired officer who is "qualified" and has "identification" under LEOSA can nonetheless be arrested, prosecuted, and punished under Rhode Island

law, with penalties of up to $1,000 and five years in prison for carrying a concealed firearm without a Rhode Island RPO permit.  R.I. GEN. LAWS § 11-47-26.

### As Applied, Rhode Island Law Deprives FLEOA's Members of Their LEOSA Rights

35. FLEOA's members include retired law enforcement officers residing in Rhode Island who are "qualified" and have "identification" under LEOSA.

36. Those LEOSA qualified members are nonetheless subject to being arrested, prosecuted, and punished under Rhode Island law if they carry a concealed firearm in Rhode Island without a Rhode Island RPO Permit.

37. Because of Rhode Island law, some of FLEOA's LEOSA-qualified members have been deterred from exercising their right to carry a concealed firearm under LEOSA out of fear for being arrested, prosecuted, and punished under Rhode Island law.

38. Also because of Rhode Island law, some of FLEOA's LEOSA-qualified members have been deterred from applying for a permit under Rhode Island law because it is onerous, unnecessary, and they fear that if their permit application is denied, it will permanently affect their ability to carry a firearm in the future, under LEOSA or otherwise.

39. Moreover, some of FLEOA's LEOSA-qualified members have unsuccessfully attempted to obtain a permit under Rhode Island law, leaving them

no alternative option to carry a firearm despite their federal right to do so under LEOSA.

## COUNT I
**(42 U.S.C. § 1983)**

40. Plaintiff incorporates and realleges the previous paragraphs of the Complaint as if set forth fully herein.

41. LEOSA is a federal law, which confers an individually enforceable statutory right for "qualified retired law enforcement officers" with the proper "identification" to carry a concealed firearm in the United States.

42. The right is concrete and is within the competence of the judiciary to enforce – if an individual meets the criteria of a "qualified retired law enforcement officer" and carries the "identification" required under LEOSA, he or she is entitled under federal law to carry a concealed firearm, "notwithstanding" Rhode Island law.

43. LEOSA imposes a binding obligation on the individual states, including Rhode Island, to allow a QRLEO with LEOSA identification to carry a concealed firearm and not to arrest, or prosecute those individuals for violating Rhode Island law.

44. LEOSA also imposes a clear and binding obligation on the individual states, including Rhode Island, not to impose additional and undue burdens on an individual who is a "qualified retired law enforcement officer" and is carrying the

identification required under LEOSA, before he or she may carry a concealed firearm in the State.

45. FLEOA's members include "qualified retired law enforcement officers" who are entitled to carry a concealed firearm under LEOSA, but are nonetheless subject to the State of Rhode Island's separate, non-LEOSA permit laws. Those members are entitled to exercise their individual right under LEOSA to carry a concealed firearm within Rhode Island without fear of prosecution and without being required to undergo additional burdens imposed by the State.

46. Defendants have acted under color of State law by enforcing the RPO Permit process under R.I. GEN. LAWS § 11-47-18, and enforcing, or threatening to enforce, the State's criminal laws R.I. GEN. LAWS § 11-47-8(a) against individual who are entitled to carry a concealed firearm under LEOSA.

47. Defendants and the State of Rhode Island have thereby denied Plaintiff's members their rights to carry a concealed firearm conferred by LEOSA.

48. Defendants' actions, policies, practices, and customs therefore have deprived FLEOA and its members their federal rights under the law of the United States, in violation of 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiff requests judgment as follows:

a. Awarding Plaintiff damages (including compensatory, presumed, punitive, and nominal damages)

b. Enjoining the State of Rhode Island, the Attorney General, and the Superintendent of State Police from arresting and prosecuting individuals under Rhode Island's firearm laws if those individuals are entitled to carry a concealed firearm under LEOSA.

c. Enjoining the State of Rhode Island, the Attorney General, and the Superintendent of State Police from requiring individuals entitled to carry a concealed firearm under LEOSA, to obtain a retired officer permit from the Superintendent of State Police;

d. Enjoining the State of Rhode Island, the Attorney General, and the Superintendent of State Police from imposing conditions on the right to carry a concealed firearm under LEOSA; and

e. Awarding Plaintiff its attorneys' fees and costs; and

f. Awarding Plaintiff all such other relief as this Court deems appropriate.

## COUNT II
### (Declaratory Judgment – Supremacy Clause)

49. Plaintiff incorporates and realleges the previous paragraphs of the Complaint as if set forth fully herein.

50. Under the Supremacy Clause of the United States Constitution, Congress may preempt state law expressly or by implication when the state law stands in the way of Congress's purposes and objectives.

51. LEOSA expressly preempts inconsistent state laws related to the possession of concealed firearms ("Notwithstanding any other provision of the law of any State or any political subdivision thereof," 18 U.S.C. § 926C(a)).

52. Even without express preemption, LEOSA impliedly preempts inconsistent state laws because the purpose and objective of LEOSA is to eliminate

the patchwork of inconsistent state laws relating to retired officers carrying concealed firearms and to replace it with a uniform national standard, as set forth in LEOSA.

53. Nonetheless, Rhode Island law does not exempt QRLEOs with valid LEOSA identification from prosecution; and instead, has established a state-specific scheme for retired law enforcement officers residing in Rhode Island to carry concealed firearms without prosecution—in clear violation of LEOSA.

54. Many members of FLEOA are individuals residing in Rhode Island entitled to carry a concealed firearm under LEOSA.

55. FLEOA, on behalf of its members, and the State of Rhode Island have a genuine and current controversy as to the application of Rhode Island law to FLEOA's members who are qualified to carry a concealed firearm under LEOSA. The controversy exists because of the following:

   A. These members are subject to arrest and prosecution under Rhode Island law for possessing a concealed firearm if they do not have a Rhode Island RPO Permit—even if those members are otherwise entitled to carry a concealed firearm under LEOSA.

   B. To avoid prosecution under Rhode Island law, these members are forced to apply for a Rhode Island RPO Permit before they may carry a concealed firearm in Rhode Island.

56. Both Plaintiff and the State of Rhode Island have a stake in this controversy which, once resolved, will have a direct and immediate effect on the parties, as well as on FLEOA's individual members subject to Rhode Island law.

57. A judicial determination resolving this actual controversy is necessary and appropriate at this time.

**WHEREFORE**, Plaintiff requests a judgment as follows:

a. Declaring, pursuant to 28 U.S.C. § 2201, that R.I. Gen. Laws § 11-47-8(a) is preempted as applied to individuals who are entitled to carry a concealed firearm under LEOSA;

b. Enjoining the State of Rhode Island, the Attorney General, and the Superintendent of State Police from arresting and prosecuting under R.I. Gen. Laws § 11-47-8(a) those individuals who are entitled to carry a concealed firearm under LEOSA;

c. Enjoining the State of Rhode Island, the Attorney General, and the Superintendent of State Police from requiring individuals who are entitled to carry a concealed firearm under LEOSA, to obtain a Rhode Island RPO Permit from the Superintendent of State Police;

d. Enjoining the State of Rhode Island, the Attorney General, and the Superintendent of State Police from imposing any other conditions to carry a firearm not specifically required by LEOSA,; and

e. For all such other relief as this Court deems appropriate.

Dated: November 7, 2024                                Respectfully submitted,

/s/*Stephen M. Prignano*
Stephen M. Prignano (3649)
McIntyre Tate LLP
50 Park Row West, Suite 109
Providence, RI 02903
(401) 351-7700
SPrignano@McIntyreTate.com

**BLANK ROME LLP**
NICHOLAS C. HARBIST, ESQ.
MICHAEL R. DARBEE, ESQ.
300 Carnegie Center, Suite 220

                                          Princeton, NJ 08540
                                        Tel: (609) 750-2991
                                        Nicholas.Harbist@BlankRome.com
                                        Michael.Darbee@BlankRome.com
                                        *Attorneys for Plaintiff Federal Law Enforcement Officers Association*